### THE THOMAS QUIGLEY.

#### (Circuit Court of Appeals, Second Circuit. April 19, 1904.)

#### No. 150.

1. TOWAGE—TUG MOVING LIGHTER IN ABSENCE OF MASTER—LIABILITY FOR INJURY.

A tug which, contrary to custom, took a loaded lighter from a safe anchorage in the absence of the master, and towed it to the wharf of the cargo owner, assumed the duty of seeing that it was left in the care of some competent person, and did not relieve herself from liability for its injury by delegating such duty to the wharf owner.

2. WHARVES—UNSAFE CONDITION OF BOTTOM—LIABILITY OF OWNER.

The owner of a wharf used for its own purposes, which negligently allowed the bottom around it to become filled with obstructions, so that a vessel could not safely lie there unless special care was taken to prevent it from grounding at low tide, and which had a loaded lighter brought there and moored on Sunday, during the temporary absence of the master, assumed the duty of seeing that it was so placed as to be safe, and is liable for its injury resulting from the failure to breast it out into sufficiently deep water.

3. TOWAGE—INJURY TO TOW—CONTRIBUTORY FAULT.

The owner of a lighter which was moved by a tug on Sunday, contrary to the usual custom, at the instance of the owner of the cargo, was not

chargeable with fault because the master, who did not know it was to be taken that day, was temporarily absent, so as to preclude him from collecting damages for its injury through the fault of the tug and the cargo owner.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal from a decree of the District Court for the Southern District of New York, in favor of the libelant for $1,773.03 and against the asphalt company and the tug Quigley, one-half of said sum to be paid by each. The libelant was the owner of the lighter Stamford and filed the libel to recover the damages sustained through the sinking of the Stamford at the asphalt company's wharf at Newark, N. J., after having been towed there, without a master, by the Quigley. The District Court found that both the company and the tug were at fault and both have appealed. The opinion below is reported in 123 Fed. 161.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

James J. Macklin and Le Roy S. Gove, for claimants.
R. D. Benedict, for appellant Barber Asphalt Co.
Herbert Green, for appellee.

COXE, Circuit Judge. The District Court found the tug liable for towing the lighter on Sunday, from Hunter's Point, East River, to Newark, N. J., and delivering her, with no care taker on board, to incompetent and ignorant laborers at work on the premises of the asphalt company.

That this was the initial fault to which all the others were attributable can hardly be doubted. If there had been a prudent and skillful master on board the Stamford to see that she was properly breasted out from the bulkhead and that her lines were sufficiently slack to permit her to slide into deep water as the tide receded, if there had been a competent person present to offer her assistance in case of emergency the accident would not have happened. For this neglect the tug was primarily responsible. She should not have undertaken the voyage at all in the absence of the master but, having done so, it was her duty to deliver the Stamford into the custody of some responsible person, having sufficient expert knowledge to see that she was not permitted to sink at her dock.

The asphalt company was inculpated for maintaining a dangerous mooring place for vessels doing business at its wharf, the bottom being uneven and the water, at low tide, insufficient for loaded boats to lie there with safety. The Stamford came there to deliver a cargo of stone dust to the asphalt company. The company was bound to know the condition of the bottom and the depth of water on its own premises. Its employés knew that the Stamford was without a master and they undertook to make her fast. They were required to exercise ordinary skill and care, but instead of this the work was done in a manner so negligent that at low tide, owing to the parting of the bow line furnished by the asphalt company, one end of the lighter slid into deep water, the other end catching on the bottom. The result was that when the tide returned she took in water enough to sink her.

130 F.—22

It is argued that the Stamford may have sprung a leak, which would acccount for her sinking. The answer is that there is no testimony to sustain the contention. On the contrary it appears that the lighter was in good condition before the disaster and, even after she was raised, she did not leak while being towed to a dry dock for repairs. We cannot substitute conjecture for facts.

Further discussion is unnecessary for the reason that the questions in controversy are all fully treated in the opinion of the District Judge. We concur in his reasoning and conclusions with a single exception. We do not assent to the proposition that "it does not appear that the result would have been changed" if the master of the Stamford had proceeded to Newark and taken charge of her. We agree, however, with the District Judge in thinking that, in the peculiar circumstances here developed, the act or omission of the master does not relieve the appellants from the consequences of their negligence.

The decree is affirmed with interest and costs.